[Filed March 19, 1885.]

## THE STATE OF OREGON v. AARON LURCH.

CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—EVIDENCE.—Upon trial of an indictment for obtaining money by false pretenses, where the charge is that the accused had obtained money by giving certain forged instruments, purporting to be promissory notes of third parties, as security, representing them to be genuine, the accused may give evidence that the signatures upon the notes were written by himself, under the direction and authority of the persons represented to be the makers.

PROMISSORY NOTE.—A note so signed is not a false writing, but genuine.

LANE COUNTY.   Defendant appeals.   Reversed and new trial ordered.

*W. R. Willis*, for Appellant.

*J. W. Hamilton, District Attorney,* and *Geo. S. Washburn*, for Respondent.

LORD, J.——The defendant was indicted, tried, and convicted for obtaining money under false pretenses. The Criminal Code provides that "upon a trial for having, by any false pretense, obtained the signature of any person to any written instrument, or obtained from any person any valuable thing, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing, but such pretense, or

some note or memorandum thereof, must be in writing, and either subscribed by or in the handwriting of the defendant." (Code, p. 362, § 173.)

The substance of the allegation is that the defendant, intending to cheat and defraud Phœbe B. Kinsey of her money and property, falsely and feloniously did pretend and represent that a certain instrument in writing, purporting to be a promissory note, was the genuine promissory note of Lurch Bros., A. H. Spare, and Samuel Dillard; that the two signatures to the said note, purporting to be the signatures of the said Spare and Dillard, were the true and genuine signatures of the said Spare and Dillard; and that the said Spare and Dillard had signed the said note as security for the payment of the same, when in truth and fact the said note, purporting to be the note of Lurch Bros., and signed by the said Spare and Dillard, was not the genuine note of the said Spare and Dillard, or either of them, nor their true or genuine signatures, or either of them, but were forgeries, which fact the said defendant well knew, etc. . . . . . by means of which said false pretense and pretenses the said defendant did then and there, etc., unlawfully, knowingly, and feloniously obtain from the said Phœbe B. Kinsey $900, etc., with the intent to cheat and defraud the said Phœbe B. Kinsey of her goods and money.

By the bill of exceptions it appears that the State, to maintain the issues upon its part, called as a witness Mrs. Phœbe B. Kinsey, who testified that on December 15, 1883, Mr. Washburne, her agent and attorney, came to her house with the defendant and said that the defendant wanted to borrow $900; that she asked Mr. Washburne what security the defendant could give, and he said he could give the note of Lurch Bros., with Samuel Dillard and A. H. Spare as security. The witness was then asked what the defendant Lurch said to her in regard to getting Dillard and Spare to sign the note, and answered that he told her that he would take the note to Cottage Grove and have it signed by Dillard and Spare, and return it next Monday; this was on Saturday. Washburne being called, testified in substance that the defendant came to his office and wanted to

borrow $700 to $900; that he told him that Mrs. Kinsey had some money to loan, and that they went to see her, and that she said that she would let the defendant have the money if I approved of the security. Being asked what security the defendant said he could give, the witness answered that the defendant said he could give Spare and Dillard. He was then asked: "What did Lurch say at the time in regard to getting Spare and Dillard to sign the note themselves?" and answered that the defendant said that he would take the note to Cottage Grove and get Dillard and Spare to sign it, and return it on Monday. "He came back Monday with the note, and also with some notes as collaterals. I took the notes and collaterals, and gave him the money, $900." A. H. Spare being called, testified that he did not sign the note described in the indictment, and did not give any person authority to sign it. Samuel Dillard being called, also testified that he did not sign the note, and never authorized anyone to sign the note. Some exceptions were taken to this evidence, and other evidence offered and received, but the purposes of this case do not require us to note them.

The defense then offered to prove by the defendant that the signatures of A. H. Spare and Samuel Dillard upon the note were written by the defendant, under the direction and authority of A. H. Spare and Samuel Dillard. This was objected to, and the exception taken involves the ground of error upon this appeal. The evidence shows that the defendant represented that he could give these names as security for the payment of the note, and it was, in fact, the reliability of these names which induced Mrs. Kinsey to purchase the note. It was the security she was concerned about, and these were the names the defendant offered. Subsequently, when the note was presented with their signatures, or what purported to be their signatures, the note was accepted, and the money thus obtained. Dillard and Spare both testified that they did not sign the note, nor give any authority to anyone to put their signatures to it. In the opening of the case, the defendant had admitted that he had written the names of Spare and Dillard upon the note, but by

XII. OREG.—7.

the direction and authority of each of them.   This, however, was immaterial; for the record discloses a case had been made against the defendant unless he could obviate the effect of this evidence.   Now it seems to us it must be conceded, if both Spare and Dillard did direct and authorize the defendant to put their names or signatures to the note, it became their binding obligation, upon which they were liable, and Mrs. K. got what she bought or contracted for.   Although the manual or physical act of writing the names was not theirs, it became so by their direction, consent, and authority, and was, in legal effect, their signatures.   Their direction to sign their names was a signing by them, and in such case the signatures would not be forgeries, nor the note spurious.   It is not a false writing, but a genuine note.   And if this be true the defendant gave to Mrs. Kinsey the security which he represented to her that he could procure, and upon which she parted with her money.   The State had deemed it material to prove that the defendant had no authority from Spare and Dillard, or either of them, to sign their names, and if it was, why should not the defendant be allowed to negative and contradict that evidence?

The object of the defendant, by the evidence offered, was to show that he had authority from each of them to put their signatures to the note, for the purpose of showing that the note was genuine, and that their signatures, although written by him, were authorized by them, and not forgeries, and that the security that he had represented he would give had been furnished, and thus obviate the intent of committing the crime with which he was charged.   What effect this evidence might have had upon the result was for the jury to determine, and with which we have nothing to do.

We think the evidence was admissible, and that it was error to exclude it.   The judgment must be reversed, and a new trial ordered.